UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:14CV-00071-JHM

KAREN ROOF                                                                                                                      PLAINTIFF

VS.

BEL BRANDS USA, INC., et al.                                                                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's motion to remand pursuant to 28 U.S.C. § 1447(c) [DN 12] and on a motion by Defendants to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [DN 16]. Fully briefed, these matters are ripe for decision.

**I. BACKGROUND**

On June 5, 2014, Plaintiff, Karen Roof, filed this action in the Grayson Circuit Court alleging employment discrimination on the basis of age and sex in violation of KRS § 344.040, retaliation in violation of KRS § 344.280, and other state law claims of promissory estoppel, negligent hiring, and civil conspiracy. Plaintiff began her employment with Defendant Bel Brands USA, Inc., in May of 1995 at its Leitchfield, Kentucky facility. During her employment, Plaintiff was employed as a production floor worker and then a warehouse worker. Plaintiff operated forklifts, unloaded trucks, managed inventory, and transferred material to the production floor by the use of computers. In 2009, Bel Brands obtained a new computer system to manage business operations, SAP, and began to use E-Win, a bar coding software system to track and keep inventory. Plaintiff alleges that she took courses on these software programs. Bel Brands placed the license to use SAP in Plaintiff's name. Plaintiff represents that she and James Nelson were responsible for all aspects of running the software programs.

Plaintiff alleges that she asked for a raise after SAP and E-Win went live because of the extra work she had received. Her request was denied. In 2012, Bel Brands hired Defendant Hyrum Horn as the Supply Chain Manager for Bel Brands' Leitchfield facility. According to Plaintiff, Horn decided to make Plaintiff's existing job duties a coordinator position and represented to Plaintiff that there was no reason she would not get the coordinator position job. Plaintiff claims that on or around the spring of 2013, Defendants began terminating older workers for contrived reasons, including Plaintiff's warehouse supervisor. Bel Brands advertised for the warehouse supervisor position. Plaintiff asked Horn if she should put in for the position, to which Horn responded "go for it." Horn later told Plaintiff that Bel Brands "was seeking to hire outside of the company for the position" and that Bel Brands was going to "make [her] a coordinator because [she was] already doing that job." (Complaint ¶¶ 52-53.) In the summer of 2013, Bel Brands hired Rod Inman for the warehouse supervisor position and instructed Plaintiff to train him to use the warehouse software. Horn represented to Plaintiff that he expected her to be in a coordinator position by December 2013.

Plaintiff contends that Horn told Tiffany Overstreet, Plaintiff's co-worker in the warehouse, that Plaintiff had applied for the warehouse supervisor position. As a result, Overstreet became aggressive toward Plaintiff because "Plaintiff was trying to take her job." Overstreet refused to communicate with Plaintiff causing tensions in the warehouse. Plaintiff asserts that she voiced her concerns to Horn. According to Plaintiff, Overstreet made false allegations against Plaintiff to Horn which Horn knew were false. According to Plaintiff, Horn disqualified Plaintiff and Overstreet from getting a coordinator position. Bel Brands then advertised the coordinator position. Plaintiff was informed by Horn that she would not be considered for the position. Bel Brands hired Paul Myers for the coordinator position. By hiring

Myers for the coordinator position, Plaintiff asserts that Bel Brands constructively demoted her from running the warehouse. Additionally, Plaintiff claims that Horn subsequently made frequent threats of suspending Plaintiff for minor infractions.

## II. MOTION TO REMAND

Plaintiff, a resident of Kentucky, filed suit against Bel Brands alleging employment discrimination on the basis of age and sex in violation of the Kentucky Civil Rights Act ("KCRA") KRS § 344.040, retaliation in violation of KRS § 344.280, and other state law claims of promissory estoppel, negligent hire/retention/supervision, and civil conspiracy. Bel Brands is a Wisconsin corporation with its principal place of business in Chicago, Illinois. Plaintiff also joined non-diverse defendant, Hyrum Horn, alleging employment discrimination, retaliation, promissory estoppel, and civil conspiracy. Defendants removed this action from the Grayson Circuit Court to this Court on the theory that Plaintiff had fraudulently joined Horn in an effort to defeat federal jurisdiction. Plaintiff now moves the Court to remand the case to the Grayson Circuit Court.

### A. STANDARD OF REVIEW

"'Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action.'" Walker v. Philip Morris USA, Inc., 443 F. App'x 946, 951 (6th Cir. 2011)(quoting Saginaw Housing Comm'n v. Bannum, Inc., 576 F.3d 620, 624 (6th Cir. 2009)). "The non-moving party's motive for joining the non-diverse party to the lawsuit is 'immaterial to our determination regarding fraudulent joinder.'" Id. (quoting Jerome−Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999)). The burden is on the Defendants to show fraudulent joinder, and as with any dispute over removal, all doubts are resolved in favor of remand. Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999);

Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994).

"To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." Coyne v. American Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999). "Therefore the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." Probus v. Charter Communications, LLC, 234 F. App'x 404, 407 (6th Cir. 2007)(internal citation omitted). See also Walker, 443 F. App'x at 952. In making this determination, the Sixth Circuit recognizes that the district court may "pierce the pleadings and conduct a summary inquiry" to determine whether a plaintiff's complaint has misstated or omitted "*discrete and undisputed facts*" that would determine the propriety of joinder. Walker, 443 F. App'x at 953 (citation omitted). In adopting the approach articulated by the Fifth Circuit, the Sixth Circuit in Walker stated in relevant part:

> [A]lthough the fraudulent joinder and Rule 12(b)(6) standards appear similar, the scope of the inquiry is different. For Rule 12(b)(6) motions, a district court may only consider the allegations in the complaint and any attachments. For fraudulent joinder, the district court may . . . "pierce the pleadings" and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Any contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor.* The burden of persuasion on those who claim fraudulent joinder is a heavy one.

Id. (quoting Travis v. Irby, 326 F.3d 644, 648–49 (5th Cir. 2003)). Therefore, "[w]hen deciding a motion to remand, including fraudulent joinder allegations, we apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." Casias v. Wal-Mart Stores, Inc., 695 F.3d 428, 433 (6th Cir. 2012)(citing Walker, 443 F. App'x at 952–54)).

## B. DISCUSSION

Plaintiff argues that the instant case should be remanded because Defendants have failed to

4

prove the fraudulent joinder of Horn. The Defendants, on the other hand, contend that Horn was fraudulently joined because Plaintiff has no colorable cause of action for sex or age discrimination, retaliation, or conspiracy against Horn. Specifically, Defendants argue that (1) individuals or agents who do not independently qualify as employers under the KCRA may not be held personally liable for sex or age discrimination; (2) Plaintiff's allegations establish that she has no colorable retaliation claim against Horn; and (3) Plaintiff's civil conspiracy claim is not a free-standing claim, and therefore because her KCRA claims against Horn fail, so does her civil conspiracy claim. Further, Defendants contend that Plaintiff has asserted no other claims against Defendant Horn. (Defendants' Notice of Removal at 6-8.)

### 1. KRS § 344.040: Sex and Age Discrimination

Defendants argue that the Court should dismiss Counts I and II as to Horn because individual employees cannot be held liable under the KCRA for claims based on discrimination. "Pursuant to the KCRA, it is an unlawful practice for an employer 'to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's . . . age forty (40) and over[.]'" Bzura v. Lumber Liquidators, Inc., 2014 WL 798155, *2 (W.D. Ky. Feb. 27, 2014)(quoting KRS § 344.040(1)(a)). The KCRA defines an "employer" as "a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks in the current or preceding calendar year and an agent of such a person [.]" Id. § 344.030(2) (emphasis added)). Under Kentucky and Sixth Circuit law, individual agents or supervisors who do not qualify as employers may not be held personally liable under either KCRA or Title VII. See Wathen v. Gen. Elec. Co., 115 F.3d 400, 404-405 (6th Cir. 1997); Bzura, 2014 WL 798155, *2-*3; Connor v. Patton, 133 S.W.3d 491, 493 (Ky. Ct. App. 2004). Because there is no evidence to support a

5

finding that Horn qualifies as an employer under KRS § 344.040, he cannot be held individually liable for claims of sex or age discrimination.

### 2. KRS § 344.280: Retaliation

While KCRA claims cannot typically be asserted against individuals, an individual can be liable for retaliation. Banks v. Bosch Rexroth Corp., 2014 WL 868118, *3 (E.D. Ky. March 5, 2014)(citing Morris v. Oldham County Fiscal Ct., 201 F.3d 784, 793–94 (6th Cir. 2000); Brooks v. Lexington–Fayette Urban County Housing Auth., 132 S.W.3d 790, 808 (Ky. 2004)). The Sixth Circuit has indicated that KRS § 344.280 states "it shall be an unlawful practice for a person, or for two (2) or more persons to . . . retaliate . . . ." Morris, 201 F.3d at 793–94. "Person" is defined in the Act to include "one (1) or more individuals." KRS § 344.010(1). Given the definition of person, individuals may be held liable for retaliation. Morris, 201 F.3d at 793–94; Banks, 2014 WL 868118, *3.

To make out a claim of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Scott v. Metropolitan Health Corp., 234 F. App'x 341, 346 (6th Cir. 2007); Morris, 201 F.3d at 792.

Plaintiff's allegations in her complaint fail to support a retaliation claim under KRS § 344.280. While Plaintiff alleges that she was "engaged in protected activity under [KRS] § 344.040," Plaintiff has not alleged any facts to support such a conclusion. "Under Title VII, an employee is protected against employer retaliation for opposing any practice that the employee reasonably believes to be a violation of Title VII." Johnson v. Univ. of Cincinnati, 215 F.3d 561, 579 (6th Cir. 2000). "Opposing" conduct protected by Title VII includes "complaining to anyone"

"about alleged discrimination against oneself or others." Id. at 579, 580. The allegations in the complaint reflect that Plaintiff merely complained to Horn about Overstreet. Specifically, Plaintiff alleges that she made charges against Tiffany Overstreet for not communicating with her which related to Overstreet's purported anger that Plaintiff had applied for the warehouse supervisor position and was "trying to take her job." (Complaint ¶¶ 54-56, 142.) Complaints about personality conflicts do not qualify as protected activity for purposes of a KCRA retaliation claim. Further, with regard to establishing causation, Plaintiff expressly ties Horn's decision to withdraw the coordinator position opportunity from both Plaintiff and Overstreet to Overstreet's alleged false allegations about Plaintiff, her complaint that Overstreet would not speak to her, and the tensions between Overstreet and Plaintiff. Thus, given the allegations contained in the complaint, Plaintiff cannot establish the protected activity or the causation elements of the retaliation claim.

### 3. Promissory Estoppel

"Promissory estoppel can be invoked when a party reasonably relies on a statement of another and materially changes [ her] position in reliance on the statement." Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc., 113 S.W.3d 636, 642 (Ky. Ct. App. 2003). Under Kentucky law, the elements of promissory estoppel are: "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." Harris v. Burger King Corp., 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014)(quoting C.A.F. & Associates, LLC v. Portage, Inc., 913 F.Supp. 2d 333, 350–51 (W.D. Ky. 2012). "Reliance on the promise must be justified." Id. (quoting Butler v. Progressive Cas. Ins. Co., 2005 WL 1009621, *4 (W.D. Ky. Apr. 25, 2005)).

Plaintiff can satisfy the first two elements of this claim. Plaintiff contends that Horn explicitly promised Plaintiff that she would be promoted to the coordinator position which is a salaried position earning substantially more than Plaintiff currently makes. "An overt promise such as the one Plaintiff alleges would reasonably induce action or forbearance on the part of the promisee." Harris, 993 F. Supp.2d at 692. However, the third factor is fatal to Plaintiff's claim. "[I]t is unclear what action or forbearance Plaintiff alleges this promise caused." Id. Plaintiff does not allege that, absent this promise, she turned down a more lucrative job offer, turned down an opportunity in another department, or would have terminated her employment with Bel Brands. In fact, Plaintiff does not allege that she otherwise changed or altered her conduct based on what Horn said.

**4. Civil Conspiracy**

Plaintiff also brings a claim against Bel Brands, "through its agents, including Defendant Horn," for their alleged conspiracy to violate the KCRA. Defendants argue that this claim is barred by the intra-corporate conspiracy doctrine. "The intra-corporate conspiracy doctrine states that 'a corporation cannot conspire with its own agents or employees' because the corporation and its employees 'are members of the same collective entity' and so 'there are not two separate 'people' to form a conspiracy.'" McGee v. Continental Mills, Inc., 2009 WL 4825010, *2 (W.D. Ky. Dec.11, 2009) (quoting Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ., 926 F.2d 505, 509–10 (6th Cir. 1991)). "The Kentucky Supreme Court has not yet ruled on the applicability of this doctrine, but this court has predicted that the Kentucky Supreme Court would apply the doctrine." Bzura, 2014 WL 798155, *3-*4 (citing McGee, 2009 WL 4825010, *2 (observing that "[m]ost states endorse the [intra-corporate conspiracy] doctrine") (citations omitted); Hardesty v. Johnson Controls, Inc., 2011 WL 6329756, *3 (W.D. Ky. Dec. 19, 2011)

8

("[T]he intra-corporate conspiracy doctrine is not a matter of first impression before this Court. In fact, this Court has both applied the doctrine and opined that the Kentucky Supreme Court, if faced with the appropriate factual circumstances, would do the same.")). The Court finds that Bel Brands cannot conspire with Horn or any other agents of the company because they are "members of the same collective entity." Id. Accordingly, Plaintiff's conspiracy claims are barred by the intra-corporate conspiracy doctrine.

For the foregoing reasons, the Court finds that the Defendants have met "the heavy burden of proving that there is not even arguably a reasonable basis for predicting Kentucky law might impose liability" on the non-diverse Horn. Jones Body Shop, Inc. v. PPG Industries, Inc., 2012 WL 1984292, *2 (E.D. Ky. June 4, 2012).

### III. MOTION TO DISMISS

#### A. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[]," League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accepting all of the plaintiff's allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for his entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The plaintiff satisfies this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts that are merely "consistent with a defendant's liability" or if the facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79. The allegations

must "'show[] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Bel Brands now moves to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6) arguing that Plaintiff's claims of age and sex discrimination, retaliation, promissory estoppel, negligent hiring/retention/supervision, and civil conspiracy are not plausible.

## B. DISCUSSION

### 1. KRS § 344.040: Sex and Age Discrimination

Bel Brands argues that the Plaintiff's allegations in the complaint render her sex and age discrimination claim implausible. According to Bel Brands, the Plaintiff's complaint is devoid of facts from which the Court could reasonably infer that her age or sex had anything to do with her not receiving the promotions to warehouse supervisor or coordinator position. Bel Brands argues that the only tie to Plaintiff's age or sex is her assertion that she is over 40 and was passed over for a promotion because of her age or sex; and therefore, Bel Brands argues that the Plaintiff's allegations of age or sex discrimination is thus conclusory and unsupported. With discrimination claims, "broad and conclusory allegations of discrimination cannot be the basis of a complaint and a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims." HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 614 (6th Cir. 2012). Indeed, a plaintiff must allege "sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that Defendant[] discriminated against Plaintiff with respect to [her alleged protected status]." Han v. University of Dayton, 541 Fed. App'x 622, 626 (6th Cir. 2013) (internal quotation marks omitted). Bel Brands argues that the factual allegations in this case are insufficient.

The Plaintiff responds that her complaint "contains well-pleaded, nonconclusory factual allegations, which give rise to a plausible suggestion of discrimination on the basis of age and sex

10

for a failure to promote in violation of *Kentucky* law." (Plaintiff's Response to the Motion to Dismiss at 1.) Plaintiff argues that she falls into the protection of KRS § 344.040 because she is a woman who is over the age of 40 and is engaged in protected activity – she had been deprived of employment opportunities because of her age and sex. Plaintiff further argues that "[i]t's hardly surprising that the Defendants' have pretextually hidden their unlawful schemes to deny Plaintiff promotions; however, a keynote piece of evidence is the software license placed in her name which the Discovery process will show to be from $17,000-$20,000 and the fact that Rod Inman [the individual hired for the coordinator position] told the Plaintiff 'why didn't they hire you for this job, you already know everything?'" (Id. at 5.)

The Court finds that these allegations only create speculation or suspicion; they do not show entitlement to relief for sex or age discrimination. See Twombly, 550 U.S. at 553-54. In this respect, the Court finds the facts of this case to be similar to the facts in Han v. University of Dayton, 541 F. App'x 622 (6th Cir. 2013). There, the Sixth Circuit affirmed the dismissal of the plaintiff's race and gender discrimination claims. The plaintiff, a law professor, had alleged his race and gender, and that he had received a bad review and was later discharged. The plaintiff had also alleged that a white male was hired as an adjunct professor to teach one of his patent law classes. Id. at 625. In affirming the dismissal, the Sixth Circuit held:

> Plaintiff alleges no set of facts, beyond these bare and conclusory assertions, from which a reasonable person could infer how his race or gender factored into the University's decisions regarding his employment or caused him to lose his job, as opposed to any other, non-discriminatory basis for decisions regarding his employment. The Court is therefore left to infer that the University's decision-making regarding Plaintiff's employment was discriminatory simply based on the fact that he is a man, or that he is Asian-American, or both.

Id. at 627. A similar conclusion can be reached here. The Plaintiff alleged that she had a conflict with another female co-worker and both the Plaintiff and the co-worker were subsequently denied

11

the promotion. While she has alleged that she is over forty years old and a woman, the Court simply has no factual basis which would permit it to infer that the Plaintiff's sex or age factored into Bel Brands' decision to deny her a promotion, "as opposed to any other, non-discriminatory basis."

Furthermore, in as much as Plaintiff alleged in the complaint that the failure to promote her came at a time that Defendant was offering "many older workers early retirement and buyout packages" and "began to terminate older workers for contrived reasons, such as Tim Schultz and Larry Downs," the Court finds these claims do no create an inference of age discrimination against Plaintiff in light of the Plaintiff's other allegations. (Complaint at ¶ ¶ 45, 46.) First, the Sixth Circuit has held that "[a]n employee to whom [an early retirement] offer has been extended . . . is the *beneficiary* of any distinction on the basis of age [and cannot] claim to be adversely affected by discrimination in the design or offer of the early retirement package." Slenzka v. Landstar Ranger, Inc., 122 Fed. App'x 809, 814 (6th Cir. 2004) (emphasis in original). In other words, an offer of voluntary early retirement is not evidence of age discrimination to those who receive the offer. From this proposition, this Court likewise finds that an offer of voluntary early retirement cannot be evidence of age discrimination to someone who did not receive the offer (i.e. the Plaintiff). Indeed, the fact that Bel Brands gave some employees the choice to retire does not create an inference that Bel Brands failed to promote Plaintiff based on her age. As the Court discussed recently in Downs v. Bel Brands USA, Inc., 2014 WL 4211199, *3 (W.D. Ky. Aug. 25, 2014), "[t]he Court cannot draw the inference that Bel was 'clearing out their workforce of older workers' simply because it offered a benefit to some of its employees who had spent years working for the company. The Plaintiff has not alleged, for instance, that employees who refused to accept the retirement package were fired." Id. at *3

Second, Plaintiff's allegation that other older employees were discharged for "contrived reasons" does not change the Court's decision. The Plaintiff has not provided any facts surrounding the alleged discharges or what the reasons were for the alleged terminations. Also, the Plaintiff has not alleged that the older employees were replaced by younger employees. The Court, even when accepting the Plaintiff's allegations as true, simply cannot find that the Plaintiff has alleged an age discrimination claim that is plausible on its face.

**2. KRS § 344.280: Retaliation**

For the reasons discussed in Section II(B)(2) above, Plaintiff's allegations in her complaint fails to support a retaliation claim against Bel Brands under KRS § 344.280 because Plaintiff failed to alleged any facts to support her claim that she was engaged in a protected activity or to establish the causation elements of the claim.

**3. Promissory Estoppel**

For the reasons discussed in Section II(B)(3) above, Plaintiff failed to allege facts to support the third factor of a promissory estoppel claim -- action or forbearance on the part of the promisee. As noted above, Plaintiff does not allege that she otherwise changed or altered her conduct based on the alleged promise by Horn.

**4. Negligent Hiring, Retention, and Supervision**

Plaintiff's negligent hiring, retention, and supervision claim asserted against Bel Brands is preempted by the exclusivity provision of the Kentucky Workers' Compensation Act ("KWCA"), KRS § 342.690(1). Tucker v. City of Princeton, Ky., 2010 WL 2773390, *11 (W.D. Ky. July 13, 2010) (Title VII, KCRA, Negligent Supervision and Rentention). KRS § 342.690(1) provides in relevant part that "[i]f an employer secures payment of compensation [under KWCA], the liability of such employer under this chapter shall be exclusive." KRS § 342.690(1). In Grego v. Meijer,

Inc., the court held, "[t]he statute and Kentucky case law interpreting the statute make it clear that the Workers' Compensation Act provides the exclusive remedy where a covered employee is injured by her employer's negligent actions." 239 F. Supp. 2d 676, 683 (W.D. Ky. 2002). Specifically, the district court held that "[b]ased on the plain language of KRS 342.690(1) and the Kentucky courts' long history of interpreting the Workers' Compensation Act to prohibit tort actions grounded in negligence between an employer and employee . . . the exclusivity provision of Kentucky's Workers Compensation Act bars negligent supervision claims between an employer and employee." Id.; Tucker, 2010 WL 2773390, *11(citing Estes v. Carpenter Co., 2004 WL 2633544, *7 (Ky. Ct. App. Nov.19, 2004); Bischoff v. Sears, Roebuck & Co., 861 F.2d 719, 1988 WL 114804, *2 (6th Cir. Oct. 28, 1988)).

For these reasons, the Court finds Plaintiff's common law claims for negligent hiring, supervision, and retention are barred by the KWCA.

### 5. Civil Conspiracy

For the reasons discussed in Section II(B)(4) above, Plaintiff's conspiracy claims are barred by the intra-corporate conspiracy doctrine.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's motion to remand [DN 12] is **DENIED** and Hyrum Horn is dismissed because he was fraudulently joined.

**IT IS FURTHER ORDERED** that Bel Brands USA, Inc.'s Motion to Dismiss [DN 16] is **GRANTED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

October 15, 2014

cc: counsel of record

14