UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:14CV-00071-JHM

KAREN ROOF                                                                                         PLAINTIFF

VS.

BEL BRANDS USA, INC., et al.                                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Bel Brands USA, Inc., for summary judgment [DN 59] and on a motion by Plaintiff, Karen Roof, for leave to supplement her response with the affidavit of Don Pawley [DN 66]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

On June 5, 2014, Plaintiff, Karen Roof, filed this action in the Grayson Circuit Court alleging employment discrimination on the basis of age and sex in violation of Kentucky Civil Rights Act ("KCRA") KRS § 344.040, retaliation in violation of KRS § 344.280, and other state law claims of promissory estoppel, negligent hiring, and civil conspiracy. Plaintiff also joined the age and sex discrimination, retaliation, and civil-conspiracy claims against a non-diverse defendant, Hyrum Horn ("Horn"). Defendant, Bel Brands, removed the action to federal court on the theory that Plaintiff had fraudulently joined Horn in an effort to defeat federal jurisdiction. The Court denied Plaintiff's motion to remand and granted Defendant's motion to dismiss. Plaintiff appealed the matter to the Sixth Circuit Court of Appeals who affirmed the dismissal of all of Plaintiff's claims except for her sex-discrimination claim.

Plaintiff began her employment with Defendant Bel Brands USA, Inc., in May of 1995 at

its Leitchfield, Kentucky facility. Plaintiff was employed as a production floor worker and then a warehouse worker. Plaintiff operated forklifts, unloaded trucks, managed inventory, and transferred material to the production floor by the use of computers. In 2009, Bel Brands obtained a new computer system to manage business operations and inventory control. Due to an increase in her workload as a result of the new system, Plaintiff asked for a raise. Her request was denied.

In 2012, Defendant hired Hyrum Horn as the Supply Chain Manager for Bel Brands' Leitchfield facility. In 2013, Defendant advertised for a Warehouse Supervisor position. Plaintiff asked Horn if she should put in for the position, to which Horn responded "go for it." Horn later told Plaintiff that Bel Brands "was seeking to hire outside of the company for the position" and that Bel Brands was going to "make [her] a coordinator because [she was] already doing that job." (Complaint ¶¶ 52-53.) In the summer of 2013, Bel Brands hired Rod Inman for the Warehouse Supervisor position and instructed Plaintiff to train him to use the warehouse software. According to Plaintiff, Horn represented to Plaintiff that he expected her to be in a supervisory position by December 2013.

Plaintiff and Tiffany Overstreet, Plaintiff's co-worker in the warehouse, had an on-going conflict with each other. Plaintiff asserts that she and Overstreet applied for the same position and that Overstreet became aggressive toward Plaintiff. On September 18, 2013, Horn, Inman, and Jason Frederick from Human Resources met with Plaintiff and Overstreet regarding the tensions in the warehouse. Horn testified that as a result of their conduct, he disqualified both Plaintiff and Overstreet from being considered for the open supervisory position, an Inventory Control Specialist. As a result of the September 18, 2013 meeting, Horn issued Plaintiff and Overstreet a "Memo to File" disciplinary report. Notwithstanding the Memo to File, Plaintiff

applied for the position. Defendant hired Paul Myers for the Inventory Control Specialist.

Finally, both in her deposition and her response to the motion for summary judgment, Plaintiff argues that she was also denied a promotion to Warehouse Key Operator in October 2015 when Defendant hired Derrick Decker and Justin Cockerel, two male employees whom Plaintiff had previously trained.[1]

Defendant now moves for summary judgment on Plaintiff's sex-discrimination claim.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not

---

[1] Plaintiff has not amended her complaint to add a claim for the failure of Defendant to promote her to Warehouse Key Operator. While Plaintiff argues that she can move at any time to amend the pleading to conform to the evidence, the deadline for amending the pleadings set forth in the scheduling order was September 19, 2016. Notwithstanding the untimeliness, the parties addressed this issue, and the Court will likewise address this claim.

establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). Under the Kentucky Civil Rights Act ("KCRA"), it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex. . . ." KRS § 344.040(1)(a). "Claims brought under the KCRA are 'analyzed in the same manner'" as claims brought under Title VII. Allen v. Highlands Hosp. Corp., 545 F.3d 387, 393 (6th Cir. 2008) (quoting Williams v. Tyco Elec. Corp., 161 Fed. Appx. 526, 531 & n. 3 (6th Cir. 2006)). See also Williams v. Wal–Mart Stores, Inc., 184 S.W.3d 492, 495 (Ky. 2005).

Defendant argues that summary judgment on Plaintiff's claim of sex discrimination under KCRA should be granted because Plaintiff failed to submit direct evidence of discrimination, failed to state a *prima facie* case, and failed to show that the legitimate, nondiscriminatory reason for Plaintiff's non-selection was a pretext for unlawful discrimination.

#### A. Direct Evidence

A plaintiff may support a claim of sex discrimination in employment by offering either

direct or circumstantial evidence of discrimination. Mitchell v. Vanderbilt Univ., 389 F.3d 177, 181 (6th Cir. 2004); Lewis-Smith v. Western Kentucky Univ., 85 F. Supp. 3d 885, 915–16 (W.D. Ky. 2015). The Court finds unpersuasive Plaintiff's argument that she possesses direct evidence of sex discrimination. In support of this contention, Plaintiff argues that she was discriminated against on the basis of sex as a female when in May 2013, September 2013, and October 2015, Defendant did not promote her. Plaintiff cites her testimony that she was qualified for the positions, had training, and was doing the job of these positions already. Plaintiff also offers the 2017 deposition testimony of senior manager, Paul Myers, that Plaintiff is ready for a promotion; the testimony of Hyrum Horn that Plaintiff asked to be developed for a supervisory position; and the testimony of Warehouse Supervisor Rodney Inman that an obvious question to ask is why Roof, as one of the senior people in the department, didn't get the Warehouse Supervisor position. "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Products Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). Direct evidence of discrimination "'must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [sex], but also that the employer acted on that predisposition.'" Curry v. Brown, 607 Fed. Appx. 519, 523 (6th Cir. 2015)(quoting DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004)). See also Byrd v. Vilsack, 2016 WL 6561568, *3 (W.D. Ky. Nov. 3, 2016). Plaintiff's evidence does not constitute direct evidence of sex discrimination because it does not require the Court to conclude that discrimination occurred. Roof has not offered statements by decision-makers at Bel Brands that Roof was not promoted because of her sex. An inference of discrimination might be drawn from the evidence; thus, it constitutes circumstantial evidence and is subject to review under the McDonnell Douglas

framework.

   B. **Prima Facie Case**

Defendant first argues that Plaintiff has failed to make out a *prima facie* case of discrimination. Where, as here, a plaintiff offers only indirect evidence of discrimination, she may establish a *prima facie* case under Title VII by showing she: "(1) was a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or was treated differently from a similarly situated, non-protected employee." Presley v. Ohio Dep't of Rehab. and Correction, 675 Fed. Appx. 507, 512 (6th Cir. 2017).

If a plaintiff satisfies this requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 410–11 (6th Cir. 2008); Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008). If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). This means that in order to withstand a motion for summary judgment, a plaintiff must show that there is a triable issue of fact upon which a jury could reasonably find that more likely than not the employer's reason is a pretext for unlawful discrimination. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1083 (6th Cir. 1994). overruled on other grounds by Geiger v. Tower Auto., 579 F.3d 614 (6th Cir. 2009).

Defendant concedes that Plaintiff is a member of a protected class and was denied the positions for which she applied. However, Defendant asserts that Plaintiff was not "qualified" for the positions in question and because she did not have similar qualifications to the other

6

individuals who were ultimately hired for the positions.

The Sixth Circuit has explained that "[i]n considering whether a plaintiff is qualified and thus meets the second prong of her *prima facie* burden, the case law is clear that '[a] court must evaluate whether a plaintiff established [her] qualifications independent of the employer's proffered nondiscriminatory reasons for discharge [or failure to hire] . . . [and] be careful not to conflate the distinct stages of the McDonnell Douglas test.'" White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 242 (6th Cir. 2005) (quoting Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 585 (6th Cir. 2002)). See also Taylor v. G.P.E.D.C., Inc., 2017 WL 2958505, at *9 (W.D. Ky. July 11, 2017). Defendant argues that a qualification for the position of Warehouse Supervisor was experience supervising employees; that a qualification for the position of Receiving/Inventory Control Specialist was not to have a personality conflict with a co-worker; and that a qualification for the position of Warehouse Key Operator is cross-training between the Dry (Receiving) Warehouse and Cooler (Shipping) Warehouse. Defendant maintains that because Plaintiff failed to satisfy these requirements, she was not qualified for the three positions and was not similarly situated to the other applicants. However, this argument "does precisely what the Sixth Circuit has cautioned against: conflating an applicant's qualifications with an employer's proffered legitimate non-discriminatory reason for choosing not [to] hire that applicant." Taylor, 2017 WL 2958505, *9.

"To establish that [she] is qualified for the position, a Title VII plaintiff need only show that [she] satisfied an employer's 'objective' qualifications.'" Id. (quoting Upshaw v. Ford Motor Co., 576 F.3d 576, 585 (6th Cir. 2009) (quoting Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 575–76 (6th Cir. 2003) (en banc))). "'The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at

7

least equivalent to the minimum objective criteria required for employment in the relevant field. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills.'" Taylor, 2017 WL 2958505, *9 (quoting Wexler, 317 F.3d at 575-76.); Weeks v. Michigan, Dep't of Cmty. Health, 587 Fed. Appx. 850, 856 (6th Cir. 2014)("In analyzing this element, we make 'some comparison of qualifications . . . but not the sort of close comparison that might include consideration of the employer's evaluation of subjective traits or other details about why the non-protected person was in fact selected over the plaintiff.'"). The objective "qualifications and competencies" articulated by Defendant in the job postings for these positions do not require prior supervisory experience, lack of personality conflict with a co-worker, or cross-training between the Dry and Cooler Warehouses. The hiring committee's stated preferences for what they most valued in an applicant should be considered in the second and third steps of the McDonnell Douglas framework and not in the *prima facie* stage. Based on the objective qualifications set forth in the job announcements, and viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has meet her burden of establishing that she was qualified for the positions in question. For these reasons, the Court finds that Plaintiff has set forth a *prima facie* case of discrimination.

**C. Legitimate, Non–Discriminatory Reason**

Because Plaintiff established a *prima facie* case of sex discrimination, Defendant must offer a legitimate reason for the selection of the male applicants instead of Plaintiff.

*1. Warehouse Supervisor*

The Warehouse Supervisor is responsible for the day to day operation inside the

warehouse, including "management of the warehouse operators, monitoring inventory levels and overee[ing] the safe receipt, storage, retrieval and timely dispatch of goods." (Job Posting, DN 59-17.) Additionally, the Warehouse Supervisor is also responsible for contributing to warehouse strategic plans, implementing production, productivity, quality, and customer-service standards, and selecting, orienting, training, assigning, scheduling, coaching, counseling, and disciplining employees. (Id.) Plaintiff testified that she interviewed with the Supply Chain Manager Hyrem Horn for the position. Horn testified that the hiring committee, Hyrum Horn, Plant Director Vladimir Homola, and a representative from Human Resources interviewed Roof, Rod Inman, and a number of other candidates, including a male internal candidate. The committee determined that Inman was the most qualified candidate. (Horn Dep. 24-25, 30-31.) Horn testified that while he generally tries to promote from within, if the talent pool is limited he then considers the external candidates. The committee concluded that Roof lacked the leadership and supervisory experience, job performance, and communication skills necessary for the position. In contrast to Plaintiff, Ron Inman had over three years of experience in warehouse management and over ten years experience in warehouse supervision. Horn testified that he wanted someone from another organization who had experience in warehousing, shipping, and inventory control and could shift the Leitchfield facility away from the "we-have-always-done-it-this-way" mentality. (Horn Dep 32-33, 59-60.)

*2. Receiving/Inventory Control Specialist Position*

The record reflects that Roof and another Warehouse Operator, Tiffany Overstreet, had an on-going conflict with each other at work. Roof, Inman, and Human Resource Jason Frederick met with Roof and Overstreet in September of 2013 and issued a "Memo to File" to both employees. Horn communicated to Roof and Overstreet that neither of them would be

9

considered for the open supervisory position at the Leitchfield facility due to their performance and lack of team work. (Memo to File, DN 59-12.)

Despite the Memo to File, Roof applied for the Receiving/Inventory Control Specialist Position. The Receiving/Inventory Control Specialist is responsible for Dry Warehouse receiving, including appointments, paperwork, and/or computer transactions. The Receiving/Inventory Control Specialist also maintains the inventory accuracy for all raw ingredients, packaging, semi-finished, and finished goods for all Leitchfield locations and communicates throughout the organization with external carriers, warehouse operators, warehouse supervisor, plant schedulers, and supply chain specialist regarding inbound receiving appointments. Horn testified that Roof was not interviewed for the Receiving/Inventory Control Specialist position because of her running conflict with Overstreet. (Horn Dep. at 39-41.) Paul Myers, an external candidate, was hired for this position. Myers had prior experience in warehouse logistics and an Associate's Degree in Business Administration with a concentration in management.

### 3. *Warehouse Key Operator*

The Warehouse Key Operator position is a cross-functional position between the Dry (Receiving) and Cooler (Shipping) Warehouses. The Operator is responsible for input and maintenance of all paperwork and/or computer transactions with regards to shipping activities and receipts of raw materials and packaging. While two positions were available -- one in the Dry Warehouse and one in the Cooler Warehouse, Plaintiff wanted the Dry Warehouse position. The hiring committee, Myers, Inman, and Human Resources Manager Ashley Mattix interviewed Roof, Justin Cockerel, Derrek Decker, Steve Votaw, and Bethany Crawford for the position. At the conclusion of the interview process, the hiring committee unanimously awarded

the Warehouse Key Operator positions to Decker (Dry) and Cockerel (Cooler). At the time he was hired, Decker was a Warehouse Operator in the Cooler Warehouse and had cross-trained in the Dry Warehouse. Likewise, Cockerel had specifically applied for the Warehouse Key Operator position in the Cooler, was a Warehouse Operator in the Cooler, and had volunteered to fill in for Inman as Warehouse Supervisor while he was on medical leave. The hiring committee viewed Decker and Cockerel as better candidates than Roof because they had knowledge of both shipping and receiving. In contrast, Plaintiff originally declined to be cross-trained in the Cooler (Shipping) and therefore had no knowledge of the shipping functions in the warehouse. Further, unlike Cockerel, she failed to volunteer to fill in for Inman in the position of Warehouse Supervisor when Inman was on medical leave.

Accordingly, Defendant offers a legitimate, non-discriminatory explanation for the selection of the male applicants instead of Plaintiff, thus destroying "'the legally mandatory inference of discrimination arising from the plaintiff's initial evidence.'" Manzer, 29 F.3d at 1082 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 n. 10 (1981)).

**D. Pretext**

In order to establish pretext, a plaintiff must show that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. Manzer, 29 F.3d at 1084. Ultimately, to carry her burden in opposing summary judgment, the Plaintiff must produce sufficient evidence from which a jury could reasonably reject Defendant's explanation of why it did not hire Plaintiff for the positions. Chen v. Dow Chemical Co., 580 F.3d 394, 400 (6th Cir. 2009).

With respect to the Receiving/Inventory Control Specialist position, Plaintiff argues that the Tiffany Overstreet "disqualification was pretext because everyone knew how bad of a person

11

she was." (Response at 11.) Whether or not Overstreet was a "bad person" does not demonstrate that Horn's disqualification of both women from consideration for the supervisory position was a pretext for discrimination.

With respect to the Warehouse Supervisor and the Warehouse Key Operator positions, Plaintiff argues "that the lack of qualifications fail because the record and testimony show that Roof has superior qualities and actually trained these people." (Response at 12.) In support of her qualifications, Plaintiff filed an affidavit of Don Pawley, a former co-worker of Plaintiff. Pawley stated that Roof "has the qualifications to be in management at Bel Brands because she is a long time employee, more knowledgeable than others in management, could communicate well, and did not hesitate to make decisions." (Pawley Aff. at ¶ 4.) Further, he declared that Roof trained the three male applicants who were awarded the positions for which Roof applied. (Id.)

The statements of Plaintiff, Horn, Pawley, and the other hiring committee members reveal a difference of opinion regarding the appropriate person for the supervisory positions in question; however, these differing opinions do not provide support for Plaintiff's claim of sex discrimination. Plaintiff cannot avoid summary judgment merely by disagreeing with the Defendant's decision to hire Inman, Myers, Decker, and Cockerel for the positions. See Seeger v. Cincinnati Bell Tel. Co., LLC, 681 F.3d 274, 285–86 (6th Cir. 2012) (the pertinent issue is whether the employer made an honest, informed business judgment, not whether that business judgment was correct or ideal); Hartsel v. Keys, 87 F.3d 795, 801 (6th Cir. 1996)("the law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with"; rather, it forbids them only from making decisions "for impermissible, discriminatory reasons"); Adams v. Tennessee Dept. of Finance and Admin., 179

Fed. Appx. 266, 272 (6th Cir. 2006) ("Courts are not intended to act as super personnel departments to second guess an employer's facially legitimate business decisions."). Furthermore, "to show pretext based on qualifications alone, [a plaintiff] must show that no reasonable employer would have chosen [the successful applicants] over her because [her] qualifications were significantly better than [those applicants]." Presley, 675 Fed. Appx. at 513 (quoting Bender v. Hecht's Dep't Stores, 455 F.3d 612, 626–27 (6th Cir. 2006)). With the exception of her tenure at Bel Brands, Plaintiff cannot show that her qualifications were so significantly better than Inman, Myers, Decker, or Cockerel. Inman had substantially more experience in supervising employees. Myers held an Associates Degree in business management and significant experience in logistics. Decker had cross-trained in both the Dry and Cooler Warehouses, and Cockerel had direct experience in the Cooler Warehouse and had acted in the capacity of Warehouse Supervisor when Inman was on leave. Further, Plaintiff had communicated to her supervisor that she was not interested in the Cooler Warehouse.

Finally, Plaintiff's length of employment with Defendant does not alone entitle her to the positions in question. As noted by the Sixth Circuit, "a longer term of employment does not in itself translate to a more skilled, qualified, and superior employee." Wilson v. Cleveland Clinic Foundation, 579 Fed. Appx. 392, 398 (6th Cir. 2014).

Accordingly, Plaintiff has failed to demonstrate that Defendant's proffered reasons had no basis in fact, did not actually motivate Defendant's challenged conduct, or were insufficient to motivate Defendant's challenged conduct. See Schoonmaker v. Spartan Graphics Leasing, LLC, 595 F.3d 261, 268 (6th Cir. 2010). The Court concludes that Plaintiff has not shown Defendant's proffered reason for not hiring her for these positions was pretext for sex discrimination. Accordingly, Defendant is entitled to summary judgment as to this claim.

### E. Don Pawley Affidavit

Plaintiff filed a motion for leave to supplement her response to the motion for summary judgment with an affidavit of Don Pawley [DN 66]. Defendant objects arguing that the affidavit contains conclusory assertions and opinions and is inadmissible. Defendant further objects arguing that discovery in this matter closed on April 24, 2017, and that the affidavit is not timely. The Court has reviewed the affidavit and considered it in deciding the motion for summary judgment. Much of the information contained in the affidavit involves Pawley's opinions regarding the qualifications of Plaintiff. In as much as Pawley avers that Defendant treated Plaintiff differently after the lawsuit, the Plaintiff's claim for retaliation has been previously dismissed. Finally, Pawley does not offer any evidence regarding discriminatory animus in the hiring of the positions in question. As such, the affidavit of Mr. Pawley does not alter the decision of the Court.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Bel Brands USA, Inc., for summary judgment [DN 59] is **GRANTED**. The Court will issue a Judgment consistent with this Opinion.

**IT IS FURTHER ORDERED** that the motion by Plaintiff, Karen Roof, for leave to supplement her response with the affidavit of Don Pawley [DN 66] is **GRANTED**.

cc: counsel of record

Joseph H. McKinley, Jr., Chief Judge
United States District Court

September 26, 2017